## DUDLEY, Exr v STEELE, Treasurer, etc

Ohio Appeals, 7th Dist, Mahoning Co

Decided Sept 29, 1933

W. W. Zimmerman, Youngstown, for plaintiff.

J. S. Cooper, Youngstown, for defendant.

### OPINION

By FARR, J.

The facts incident to a proper understanding of the issues in this case are, briefly, that George E. Dudley, Sr., had a trading account with Butler-Beadling & Company, stock brokers of the City of Youngstown, and in which account he had on margin a number of different stocks, amounting, so it is said, to the sum of $178,-037.50. Dudley had paid as margins upon these stocks the sum of $15,825.59, and it was for the purpose of protecting his purchases upon margins that this amount had been paid to his stock brokers. After the death of George E. Dudley, Sr., the Auditor of Mahoning County assessed the amount of taxes before stated upon the value of the stocks margined by George E. Dudley, Sr.

In order to determine this question it becomes important to determine the question of the difference between a credit and a stock investment. Stock investment has been defined by §5324 GC, and that part of the section which relates to the issues in this case reads as follows:

"The term 'investment' in stocks as so used includes all moneys invested in the capital or stock of a corporation."

Let the language of this part of the statute be carefully noted: "The term 'investment' in stocks as so used, includes all moneys invested in the capital or stock of a corporation." It therefore becomes clear that the only money that George E. Dudley, Sr., had invested in these stock transactions was the sum of $15,825.59. Now, the stock margined amounted to $181,325, and the question, as briefly stated, is, whether the estate of George E. Dudley, Sr., should pay taxes on the $15,825.59 or upon the $181,325.00.

Two sections of the General Code are of importance in determining this question. §5324, GC, portion of which has been referred to, and §5327 GC. To sustain the county's right to tax the face value of the stocks, attention was called to the case of **Ratterman v Ingalls, 48 Oh St, 468.** The third proposition of the syllabi reads as follows:

"Shares of stock which have been pledged as collateral security for loans with power of the pledges to transfer the shares to his own name, and in case the loans are not paid to sell, but which stand on the books of the company in the name of the pledgor, are properly taxable in his name."

The difficulty in the instant case is this, George E. Dudley, Sr., never received stock certificates for the $181,325. He had received what is known in common parlance of the stock trading world "street certificates", but they did not entitle him to the custody of the stock certificates representing the face value, nor give him any interest in the stocks mentioned until he had paid the residue of the amount due and owing upon these stock transactions, which was approximately $165,499.41, and the difference between the case to which refer-

ence was just made and the case at bar is this, that in the 48th State case, stock certificates had been issued and the stock was standing in the name of the pledgor. Of course, such stocks were then his property, because he held title by stock certificate, but there is a distinguishable difference between the two cases, in that Dudley, Sr., had no evidence of title or ownership. Even the street certificates were not evidence of ownership but evidence that he bore some relation to these stocks. He had invested fifteen thousand odd dollars.

Another case to which attention is called is **H. B. Payne v Watterson, etc., 37 Oh St, 121:**
"Under Title 13 of the Revised Statutes relating to taxation, a person required to list property is not authorized to deduct his debts from his investments in bonds as therein defined and to return the excess only for taxation."

However, this was another case in which Payne held the title by stock certificates duly issued to him, as indicated at the top of page 122, where it is said:

"Henry B. Payne, of the city of Cleveland, County of Cuyahoga, in listing his property for taxation in the year 1880, deducted his indebtedness amounting to $30,309, from the amount and value of certain bonds of certain corporations then held and owned by him."

Therefore, there is a clear distinguishable difference between the case at bar and the Payne case.

In the instant case Dudley, Sr., did not own the remainder of these stocks until he paid the sum of $165,499.41. The stock brokers kept the absolute control of the stocks margined by him, and it is believed that the issue is settled that you can not tax a citizen of Ohio on property that he does not own, and that was the situation in the instant case. Clearly the auditor was right in assessing the taxes on the $15,825.59, but he was not entitled to assess the Dudley estate on the $165,499.41.

For the reasons given the finding is in favor of the plaintiff and an injunction is allowed as prayed for.

Judgment for plaintiff.

POLLOCK and ROBERTS, JJ, concur in the judgment.